Duane WILSON, Plaintiff

v.

The **EXECUTIVE OFFICE OF HEALTH AND HUMAN SERVICES**, Defendant.

**Civil Action No. 08–30214–KPN.**

United States District Court, D. Massachusetts.

April 1, 2009.

Jeffrey S. Morneau, Donohue, Hyland & Donohue, PC, Holyoke, MA, for Plaintiff.

Bart Q. Hollander, Attorney General's Office, Springfield, MA, for Defendant.

## MEMORANDUM AND ORDER WITH REGARD TO DEFENDANT'S MOTION TO DISMISS (Document No. 7)

NEIMAN, United States Magistrate Judge.

Duane Wilson ("Plaintiff") brings this action against his employer, Massachusetts' Executive Office of Health and Human Services ("Defendant"), with regard to alleged violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* Defendant, raising an interesting question of law—whether Congress's enactment of the "self-care" leave provision of the FMLA validly abrogated the Eleventh Amendment immunity of the states and their divisions from private damages actions—has moved to dismiss Plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. The parties have consented to the jurisdiction of this court. *See* 28 U.S.C. § 636(c); Fed.R.Civ.P. 73.

For the reasons that follow, this court agrees with Defendant that Eleventh Amendment immunity bars Plaintiff's "self-care" leave claims. However, since the instant action also involves the "family-care" leave provision of the FMLA (for which Defendant agrees that Congress validly abrogated the states' Eleventh Amendment immunity), Defendant's motion to dismiss will be allowed in part only.

### I. Standard Of Review

In considering a Rule 12(b)(1) motion to dismiss, the court must "construe the Complaint liberally and treat all well-pleaded facts as true, according the plaintiff the benefit of all reasonable inferences." *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir.1995). Unless the plaintiff can prove the existence of subject matter jurisdiction, his complaint should be dismissed. *See id.*

### II. Background

The following facts come directly from the complaint and are stated in a light most favorable to Plaintiff, the party opposing dismissal. *See K.W. Thompson Tool Co. v. United States*, 836 F.2d 721, 726 (1st Cir.1988). In summary, Plaintiff, a Level 1 worker, alleges that between July 10, 2007, and March 12, 2008, there were three events for which he missed work. (Complaint ¶¶ 7–33.)

First, on July 10, 2007, Plaintiff requested intermittent FMLA leave to care for his mother, so-called "family-care" leave. (*Id.* ¶ 11.) After Defendant granted that request, Plaintiff took intermittent FMLA leave until January 2, 2008, when Defendant advised him that his FMLA leave had been exhausted. (*Id.* ¶ 12–15.) On January 9, 2008, Plaintiff met with and informed Defendant that, in his opinion, he had not exhausted his FMLA leave. (*Id.*

¶¶ 18–19.) Defendant disagreed and notified Plaintiff that if he did not report to work he would be fired. (*Id.* ¶ 20.) Faced with that ultimatum, Plaintiff made alternative arrangements for someone else to care for his mother and reported to work the next day, January 10, 2008. (*Id.* ¶¶ 21–22.)

The second event for which Plaintiff missed work occurred less than one week later. On January 15, 2008, Plaintiff requested FMLA leave because of an injury to his own knee, so-called "self care" leave. (*Id.* ¶¶ 23–24.) Defendant denied this second request, again notifying Plaintiff that, in its opinion, he did not have any FMLA leave remaining. (*Id.* ¶ 25.)

The third event began on February 16, 2008, when Plaintiff sustained an injury at work and was then out of work from February 20 through March 12, 2008. (*Id.* ¶¶ 26–27.) Although Plaintiff did not request FMLA leave for this third absence, on February 28, 2008, in the midst of that absence, Defendant again notified Plaintiff that his FMLA leave was exhausted. (*Id.* ¶¶ 28, 34.) Defendant also met with Plaintiff on March 7, 2008, to discuss his employment status and told him that if he did not report to work on March 12, 2008, he would be terminated. (*Id.* ¶¶ 29–32.)

On March 12, 2008, Plaintiff, again faced with the ultimatum of termination, reported to work. (*Id.* ¶¶ 33–34.) Defendant thereafter retroactively reduced Plaintiff's FMLA hours by 168, the import of which will be addressed below. (*Id.* ¶ 35.) For his part, Plaintiff claimed that, as of March 12, 2008, he actually had at least 92 hours of FMLA leave remaining. (*Id.* ¶ 36.)

Although Plaintiff's complaint raises two FMLA causes of action, neither makes any specific distinction between Plaintiff's "family-care" and "self-care" leave allegations. (*Id.* ¶¶ 37–45.) Rather, in Count 1, Plaintiff simply alleges that "Defendant interfered with, re[s]trained, or denied [him] the exercise or the attempt to exercise of his [FMLA] rights." (*Id.* ¶ 38.) In Count 2, Plaintiff simply alleges that "Defendant discriminated against [him] for opposing a practice made unlawful by [the FMLA]." (*Id.*) Plaintiff seeks money damages in both counts. (*Id.* ¶¶ 39, 45.)

III. DISCUSSION

This case converges at the intersection of the FMLA's family-care and self-care leave provisions and the states' immunity from suit under the Eleventh Amendment. Describing this as a pure · self-care case, Defendant argues that Congress has not validly abrogated the Eleventh Amendment immunity of the states from such private damages actions. Plaintiff disagrees and argues as well that this action also involves family-care leave allegations. The court, for its part, agrees with Defendant that Plaintiff's self-care claims should be dismissed but has determined that Plaintiff's family-care claims should survive.

■■■ There is no dispute that Defendant is a state agency for Eleventh Amendment immunity analysis. Nor is there any dispute that the Eleventh Amendment prevents private individuals from suing nonconsenting states for damages in federal court. *See Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). To be sure, Congress can abrogate the states' Eleventh Amendment immunity, but only if it (1) makes "its intention to abrogate unmistakably clear in the language of the statute" and (2) acts "pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment." *Nevada Dep't. of Human Res. v. Hibbs*, 538 U.S. 721, 123 S.Ct. 1972, 155 L.Ed.2d 953 (2003).

Here, the issue is not whether Congress has made its intention to abrogate unmistakably clear. It has. As Plaintiff ob-

serves, the FMLA specifically enables employees to seeks damages "against any employer (including a public agency) in any Federal or State court of competent jurisdiction." 29 U.S.C. § 2617(a)(2). Congress has defined "public agency" to include both "the government of a State or political subdivision thereof" and "any agency of . . . a State, or a political subdivision of a State." 29 U.S.C. §§ 203(x), 2611(4)(A)(iii). Rather, the issue is whether, in enacting the FMLA, Congress acted pursuant to a valid exercise of its Fourteenth Amendment, section 5 power, more particularly, its section 5 power to address gender-based discrimination. Accordingly, the court turns to that question.

The FMLA entitles eligible employees to a certain amount of unpaid leave per year in four specified instances: (1) the birth of a child, (2) the adoption of a child or placement of a foster child, (3) the need to care for a parent, child or spouse with a serious health condition (the "family-care" leave provision), and (4) the inability to work due to the employee's own serious health condition (the "self-care" leave provision). 29 U.S.C. § 2612(a)(1)(A)-(D). In *Laro v. New Hampshire*, 259 F.3d 1 (1st Cir.2001), the First Circuit held that Congress did not validly abrogate the states' Eleventh Amendment immunity when it enacted the self-care leave provision of the FMLA contained in 29 U.S.C. § 2612(a)(1)(D).

*Laro* involved a suit by an employee of New Hampshire's Retirement System who requested and was granted FMLA leave following his heart bypass surgery, but who later claimed that the state had violated 29 U.S.C. § 2615 by terminating his employment before the expiration of the period of unpaid leave provided by the FMLA. *Laro*, 259 F.3d at 4. The First Circuit noted that the only issue before it concerned "the availability of private damages actions against states under

the final provision [of the FMLA], 29 U.S.C. § 2612(a)(1)(D), which affords an employee the right to unpaid leave for inability to work due to his or her own serious health condition." *Laro*, 259 F.3d at 9. Following the analytic framework described in *Kimel v. Florida Board of Regents*, 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) and *Garrett*, 531 U.S. 356, 121 S.Ct. 955, the First Circuit determined that the self-care provision of the FMLA, 29 U.S.C. § 2612(a)(1)(D), did not "exhibit a sufficient congruence to the prevention of unconstitutional state discrimination to validly abrogate the states' Eleventh Amendment immunity." *Laro*, 259 F.3d at 16. In other words, the First Circuit found in the self-care provision of the FMLA "no direct connection to preventing unconstitutional gender discrimination by state employers." *Id.* Thus, the First Circuit joined "every circuit that has addressed the issue with regard to 29 U.S.C. § 2612(a)(1)(D)," in holding that "the [self-care] leave provision of FMLA does not validly abrogate the Eleventh Amendment immunity of the states as employers from private damages actions." *Id.* at 16–17 (citing *Lizzi v. Alexander*, 255 F.3d 128 (4th Cir.2001); *Chittister v. Dep't of Cmty. & Econ. Dev.*, 226 F.3d 223 (3rd Cir.2000); *Townsel v. Missouri*, 233 F.3d 1094 (8th Cir.2000); *Kazmier v. Widmann*, 225 F.3d 519, 527–29 (5th Cir.2000); *Sims v. Univ. of Cincinnati*, 219 F.3d 559, 566 (6th Cir.2000); *Hale v. Mann*, 219 F.3d 61, 69 (2nd Cir.2000); and *Garrett v. Univ. Ala. Bd. of Trustees*, 193 F.3d 1214, 1219 (11th Cir.1999), *rev'd on other grounds*, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001)). Accordingly, the First Circuit affirmed the dismissal of Laro's complaint based upon the state's assertion of its immunity under the Eleventh Amendment. *Laro*, 259 F.3d at 17.

Two years later, however, the Supreme Court determined that state employees

may recover money damages in federal court where the state employer has failed to comply with the *family-care* leave provision of the FMLA contained in 29 U.S.C. § 2612(a)(1)(C). *Hibbs,* 538 U.S. at 725, 123 S.Ct. 1972. In so holding, the Supreme Court resolved "a split among the Courts of Appeals on the question whether an individual may sue a State for money damages in federal court for violation of § 2612(a)(1)(C)." *Id.* The Court found that "§ 2612(a)(1)(C) is congruent and proportional to its remedial object, and can 'be understood as responsive to, or designed to prevent, unconstitutional behavior.' " *Id.* at 740, 123 S.Ct. 1972 (citing *City of Boerne v. Flores,* 521 U.S. 507, 532, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997)).

Notwithstanding the Supreme Court's determination that the family-care leave provision of the FMLA represents a valid abrogation of states' Eleventh Amendment immunity under section 5 of the Fourteenth Amendment, this court believes that the First Circuit's holding in *Laro*—that the Commonwealth's Eleventh Amendment immunity has not been validly abrogated by Congress's enactment of the self-care leave provision of the FMLA, 29 U.S.C. § 2612(a)(1)(D)—remains binding here. First and foremost, the holding in *Laro* has not been modified by, let alone presented to, the First Circuit since the Supreme Court's decision in *Hibbs.* For that reason alone—*i.e.,* "the law of the circuit doctrine"—Plaintiff's attempt to overturn *Laro* cannot hold sway. *See Gonzalez–Mesias v. Mukasey,* 529 F.3d 62, 65 (1st Cir.2008) ("[T]he law of the circuit doctrine ... holds a prior panel decision inviolate absent either the occurrence of a controlling intervening event (*e.g.,* a Supreme Court opinion on the point; a ruling of the circuit, sitting *en banc;* or a statutory overruling) or, in extremely rare circumstances, where non-controlling but persuasive case law suggests such a course.") (citation and internal quotation marks omitted).

Moreover, since the *Hibbs* decision in 2003, virtually all the circuits that have addressed the abrogation issue have continued to hold that the states are immune under the Eleventh Amendment from damages claims arising under the FMLA's self-care leave provision. *See Nelson v. Univ. Texas at Dallas,* 535 F.3d 318, 321 (5th Cir.2008); *McKlintic v. 36th Judicial Circuit Court,* 508 F.3d 875, 877 (8th Cir. 2007); *Toeller v. Wisconsin Dep't of Corrections,* 461 F.3d 871, 879 (7th Cir.2006); *Touvell v. Ohio Dep't of Mental Retardation,* 422 F.3d 392, 400 (6th Cir.2005); *Brockman v. Wyoming Dep't of Family Servs.,* 342 F.3d 1159, 1165 (10th Cir.2003); *Batchelor v. South Florida Water Management Dist.,* 242 Fed.Appx. 652, 653 (11th Cir.2007). Given the persuasive nature of those decisions, this court doubts that the First Circuit will go in a different direction.

The only possible contrary circuit authority, which Plaintiff cites, is an unpublished decision of the Fourth Circuit. As explained by the Sixth Circuit in *Touvell,* however, that case never squarely addressed the self-care leave issue and, hence, is of little value to any court seeking to apply *Hibbs* to such a circumstance:

In *Montgomery v. Maryland,* 72 Fed. Appx. 17 (4th Cir.2003) (unpublished), the Fourth Circuit affirmed the dismissal of an FMLA case for failure to state a claim, and stated in *dicta* that "[i]n [*Hibbs* ], the Supreme Court held that Congress effectively abrogated the states' *Eleventh Amendment* immunity against causes of action based on the FMLA ... sovereign immunity does not protect the states in FMLA actions." *Id.* at 19 (emphasis in original). A previous opinion issued in the same case indicates that Montgomery had taken leave under the self-care provision of the

Act. *See Montgomery v. Maryland,* 266 F.3d 334, 336 (4th Cir.2001) ("Montgomery took extended leave under the Family Medical Leave Act (FMLA) to have a scheduled surgical procedure."). The Fourth Circuit gave no explanation for this statement, however, and we do not consider it persuasive.

*Touvell,* 422 F.3d at 399 n. 2. *See also Bryant v. Mississippi State Univ.,* 329 F.Supp.2d 818, 822 (N.D.Miss.2004) (declining to follow *Montgomery* since it offered "no analysis of the issue"). Several federal district courts have also held—uniformly as far as this court can tell—that the states are immune under the Eleventh Amendment from damage claims arising under the FMLA's self-care provision. *See, e.g., Wampler v. Pennsylvania Dep't of Labor & Industry,* 508 F.Supp.2d 416, 421–22 (M.D.Pa.2007); *Wennihan v. AHCCCS,* 515 F.Supp.2d 1040, 1046 (D.Ariz.2005); *Bryant,* 329 F.Supp.2d at 822. *Accord Nicholas v. Att'y Gen.,* 168 P.3d 809 (Utah 2007).

To be sure, Plaintiff recently proffered some contrary authority arising out of a state appellate court in Iowa. (Pl.'s Notice of Add'l Auth., Exhibit (*Lee v. State of Iowa, Polk County Clerk of Court,* No. 8–821/07–1879, 2009 WL 398330 (Iowa App. Ct. Feb. 19, 2009)).) That decision, in fact, does raise some interesting points. For example, the court notes that the Senate, in explaining the purpose of the self-care provision, "specifically cited the disparate impact of job loss due to illness on *women* in low-paid jobs." *Lee,* slip op. at 9–10 (emphasis added). The court also cites legislative history from a "precursor" to the FMLA that "highlighted the disparate effect of a woman's serious health condition on her family." *Id.,* slip op. at 10–11. Accordingly, the court concludes, "gender discrimination was as much a basis for the self-care provision of the FMLA as it was for the family-care provision at issue in *Hibbs.*" *Id.,* slip op. at 13.

These points, however, remain undeveloped by Plaintiff. More importantly, this court, as described, is bound by *Laro. See also Touvell,* 422 F.3d at 400 (noting that only the First and Tenth Circuits have gone so far as to hold "that even if the self-care provision were to be given the benefit of the heightened standard of review for gender-based discrimination, [those courts would] not find that the legislative history sufficiently ties the FMLA's personal medical leave provision to the prevention of gender-based discrimination") (citing, *inter alia, Laro,* 259 F.3d at 11) (internal quotation marks omitted). Thus, even if "an argument can be made that the self-care provision of the FMLA permits a suit against the State[s]," *McKlintic,* 508 F.3d at 878 (Bright, J., concurring), that argument has not been fleshed out here and would likely not prevail in this circuit. *See Laro,* 259 F.3d at 13–14 ("There is no showing ... that establishes any nexus between gender-neutral medical leave for one's own health conditions and the prevention of discrimination on the basis of gender *on the part of states as employers.*") (emphasis in original).

Before concluding, the court adds two points. First, at oral argument Plaintiff asserted that Defendant may have waived its sovereign immunity and that he should be allowed to conduct discovery on that point. Other than quoting an off-hand comment in *Lee,* however, Plaintiff has cited no authority for this proposition. In any event, it appears clear that there has been no express waiver by Defendant of the Eleventh Amendment's ban against self-care FMLA leave suits in federal court. *See Ortiz–Feliciano v. Toledo–Davila,* 175 F.3d 37, 40 (1st Cir.1999) (discussing stringent requirements for waiver). And, "[a]s for implied waiver, it arises only 'by such overwhelming implica-

tion ... as [will] leave no room for any other reasonable construction,'" *id.* (quoting *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 239–40, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985)), and Plaintiff makes no such showing. *See also McKlintic,* 508 F.3d at 877 (rejecting any implication that state waived its immunity to self-care FMLA leave claims by offering FMLA leave in its employee handbook).

 Second, as indicated, Defendant has described this case as a self-care case only, while Plaintiff asserts that the complaint can be read as raising family-care claims as well. Giving Plaintiff the benefit of the doubt at this early stage of the litigation, the court believes that the complaint does indeed raise family-care claims. For example, Plaintiff alleges that on July 10, 2007, he requested intermittent FMLA leave to care for his mother; that on January 9, 2008, before he suffered his own injuries, Defendant disputed Plaintiff's contention that his FMLA leave had expired and told Plaintiff that if he did not report to work the next day he would be fired; that, faced with that ultimatum, Plaintiff reported to work on January 10, 2008, and made arrangements for someone else to care for his mother; and that in March Defendant "reduced" Plaintiff's FMLA hours which, Plaintiff explained at oral argument, confirms that he actually had family leave still available to him back in January. Accordingly, the complaint will not be dismissed, insofar as it raises family-care leave claims.

### IV. CONCLUSION

For the reasons stated, Defendant's motion to dismiss is ALLOWED as to Plaintiff's self-care FMLA claims, but otherwise DENIED.