María J. COLLAZO–ROSADO, Plaintiff

v.

**UNIVERSITY OF PUERTO RICO and Marisol Gómez–Mouakad in her personal and official capacities, Defendant.**

**Civil No. 10–1113 (DRD).**

United States District Court, D. Puerto Rico.

March 23, 2011.

Emil J. Rodríguez–Escudero, M.L. & R.E. Law Firm, San Juan, PR, Jorge Martinez–Luciano, Pedro Ortiz Alvarez Law Offices, Ponce, PR, for Plaintiff.

Julio Nigaglioni–Arrache, Lopez Mulero, Colon Rodríguez & Nigaglioni Law Office, Angel M. Cintron–Garcia, Cintron & Laboy P.S.C Attorneys at Law, Mayra M. Gonzalez–Reyes, Raquel M. Dulzaides, Jimenez, Graffam & Lausell, San Juan, PR, for Defendant.

## OPINION AND ORDER

DANIEL R. DOMÍNGUEZ, District Judge.

### I. PROCEDURAL HISTORY

Plaintiff María J. Collazo–Rosado's (hereinafter "Plaintiff") claims are founded upon the retaliation provision (Title V) of the American with Disabilities Act (hereinafter "ADA"), 42 U.S.C. § 12112 et seq., as well as upon 42 U.S.C. § 1983 for alleged violations of the Equal Protection Clause of the First and Fourteenth Amendments of the Constitution of the United States. (Docket No. 1).

Pending before the Court is Defendant's University of Puerto Rico (hereinafter "Defendant") *Motion to Dismiss* (Docket No. 16) under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction due to Eleventh Amendment Immunity. (Docket No. 16). The motion has been fully briefed by the parties. (*See* Docket Nos. 16, 18, 22 & 24).

Defendant raises the defense of Eleventh Amendment sovereign immunity. Specifically, they characterize Plaintiff's suit as arising from a Title I claim, which is barred by sovereign immunity, even though it was filed as a Title V retaliation claim. In response, Plaintiff insists that her claim must be addressed as an independent Title V claim for retaliation, unrelated to a Title I claim, although it remains uncontested that the allegedly violative acts occurred at Plaintiff's place of employment. Plaintiff further asserts that neither the Supreme Court nor the First Circuit have yet decided whether Eleventh Amendment immunity applies to ADA retaliation claims. Decisions in other circuits on this issue are split. Plaintiff requests that the Court determines whether a retaliation claim, unaccompanied by a Title I claim, is barred by Eleventh Amendment immunity.

Following review of the Defendant' motion to dismiss, and the responses and replies thereto, this Court finds that the Defendant' *Motion to Dismiss* must be **GRANTED in part** and **DENIED in part** for the reasons stated below.

### II. MOTION TO DISMISS UNDER 12(B)(1) FOR LACK OF SUBJECT MATTER JURISDICTION

Defendant in the instant case has requested dismissal under Rule 12(b)(1) of the Federal Rules of Civil Procedure. A challenge under Rule 12(b)(1) constitutes a challenge to federal subject matter jurisdiction, which includes ripeness, mootness, sovereign immunity and, of course, subject matter jurisdiction. *Valentin v. Hospital Bella Vista,* 254 F.3d 358, 362–63 (1st Cir. 2001). Where subject matter jurisdiction is challenged under 12(b)(1), the party asserting jurisdiction bears the burden of demonstrating the existence of federal subject matter jurisdiction. *Skwira v. U.S.,* 344 F.3d 64, 71 (1st Cir.2003).

Where, as in the instant case, the Court is presented with a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the Court should address this matter prior to determining whether the complaint of that case "states a cause of action on which relief could be granted." *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946). "After all, if the court lacks subject matter jurisdiction, assessment of the merits becomes a matter of purely academic interest." *Deniz v. Municipality of Guaynabo,* 285 F.3d 142, 150 (1st Cir.2002).

In order to rule upon a motion to dismiss under Rule 12(b)(1), the court applies the same standard of review which is applicable to motions under Rule 12(b)(6). *See Negron–Gaztambide v. Hernandez–Torres,* 35 F.3d 25, 27 (1st Cir.1994); *see*

*also Caraballo–Melia v. Suarez–Dominguez,* Civ. 08–2205, 2010 WL 830958 at *1 (D.P.R. March 4, 2010).

■■ "[T]he general rules of pleading require a short and plain statement of the claim showing that the pleader is entitled to relief." *Gargano v. Liberty Int'l Underwriters,* 572 F.3d 45, 49 (1st Cir.2009) (quoting Fed.R.Civ.P. 8(a)(2))(internal quotation omitted). Accordingly, the Court should dismiss a complaint under Rule 12(b)(6) where the complaint does not "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *see also Bell Atlantic v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (establishing the "plausibility" standard). However, in the context of a Rule 12(b)(1) motion, the Court may "take into consideration extra-pleading material." *Wojciechowicz v. United States,* 530 F.Supp.2d 421, 424 (D.P.R.2007) (quoting 5B Charles Allan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 (2d ed.1990) p. 213) (internal quotation omitted). Thus, the Court "may augment the facts in the complaint by reference to (i) documents annexed to the complaint or fairly incorporated into it, and (ii) matters susceptible to judicial notice." *Gagliardi v. Sullivan,* 513 F.3d 301, 306 (1st Cir. 2008) (internal quotations omitted). Accordingly, this District Court has previously found that "[w]here movant has challenged the factual allegations of the party invoking the district court's jurisdiction, the invoking party must submit affidavits and other relevant evidence to resolve the factual dispute regarding jurisdiction." *Id.* (internal quotation omitted); *see also Aversa v. United States,* 99 F.3d 1200, 1210–11 (1st Cir.1996) (finding that "the court may consider whatever evidence has been submitted, such as the depositions and exhibits submitted in the case").

■ When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by *Twombly,* 550 U.S. 544, 127 S.Ct. 1955 (2007), and *Iqbal,* —— U.S. ——, 129 S.Ct. 1937 (2009). First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. *Maldonado v. Fontanes,* 568 F.3d 263, 268 (1st Cir.2009)(quoting *Iqbal,* 129 S.Ct. 1937)(internal quotation omitted).

■ Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." *Id.* This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. *Id.* Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." *Sanchez v. Pereira–Castillo,* 590 F.3d 31, 41 (1st Cir. 2009). "The standard is plausibility assuming the pleaded facts to be true and read in plaintiff's favor" rather than "likely[ness of] success on the merits". *Sepulveda–Villarini v. Department of Educ. of Puerto Rico,* 628 F.3d 25, 30 (1st Cir. 2010). "A plausible but inconclusive inference from pleaded facts will survive a motion to dismiss" since "it is possible that other, undiscovered facts, may explain the sequence better". *Id.*

Accordingly, in the instant case, the Court finds that Plaintiff has the burden of establishing that subject matter jurisdic-

tion exists within the parameters of the "plausibility" standard established by *Twombly* and *Iqbal* when confronted with Defendant's 12(b)(1) *Motion to Dismiss.*

## III. FACTUAL BACKGROUND

 When analyzing a case at the motion to dismiss stage, we accept as true the facts alleged in the complaint and draw all reasonable inferences in Plaintiff's favor. *Toledo v. Sanchez,* 454 F.3d 24, 30 (1st Cir.2006)(citing *Educadores Puertorriqueños en Acción v. Hernández,* 367 F.3d 61, 62 (1st Cir.2004); *Neo Gen Screening, Inc. v. New England Newborn Screening Program,* 187 F.3d 24, 25 (1st Cir.1999)).

Between October and November of 2006, Plaintiff was interviewed by Dr. Helena Mendez–Medina for the position of "Mentorship Coordinator" of a federally funded program at the University of Puerto Rico Humacao Campus, Academic Support and Development Center (hereinafter "ASDC"). (Docket No. 1, at ¶ 3.1). During the interview, Plaintiff informed Dr. Mendez about her condition of "Crohn's Disease" and indicated that if she was assigned to an area next to the bathroom and allowed to attend medical appointments, she could adequately perform the duties related to the position [1]. (*Id.* at ¶ 3.2). In December of 2006, Plaintiff was hired as a transitory employee under the supervision of Dr. Mendez (*Id.,* at ¶ 3.4) who never requested any medical documents to confirm the medical condition that Plaintiff expressed having and granted Plaintiff the requested reasonable accommodation. (*Id.* at ¶¶ 3.4–3.5).

In August of 2008, Co–Defendant, Marisol Gómez, joined ASDC as Co–Director and became Plaintiff's immediate supervisor. (*Id.* at ¶ 3.7). Plaintiff informed Gómez about her medical condition, and, according to Plaintiff, Gómez did not show any objection to, nor request medical documents to verify Plaintiff's condition. (*Id.* at ¶ 3.8).

During a meeting on January 22, 2009, a peer named Juan C. Rivera commented that "in this university they continue to bring handicapped people with that thing that they have to give opportunity to everybody", in the presence of both Gómez and Plaintiff. (*Id.* at ¶ 3.10) At that time, Gómez broke into laughter, (*Id.* at ¶ 3.12), and Plaintiff alleges that Gómez condoned and did not admonish the coworker's action.

On February 23, 2009, Gómez questioned Plaintiff's absences, which were charged to her medical leave, and ordered "that Plaintiff could not continue taking such leaves from work". (*Id* at ¶ 3.14).

Plaintiff claims that the relationship with Gómez worsened progressively and that each time Plaintiff had to use the bathroom, co-workers mocked her. Plaintiff also alleges that Gómez tolerated this mocking behavior. (*Id.* at ¶ 3.16).

On March 11, 2009, Gómez admonished Plaintiff because of her March 9th and 10th medical leaves and questioned her continuous visits to the bathroom. (*Id.* at ¶ 3.17). Plaintiff further alleges that, on March 12, 2009, Gómez bypassed Plaintiff by assigning employee Mayda Rivas certain extra work hours despite the fact that Plaintiff had already confirmed her interest and availability for working those same hours, (*Id.* at ¶ 3.18). Such action deprived Plaintiff of extra income from overtime work. (*Id.* at ¶ 3.19). That same day, Plaintiff met with delegates from the "*Hermandad de Empleados Exentos No Docentes* " (hereinafter "HEEND") to discuss Gómez's denial of reasonable accom-

---

1. "Crohn's Disease" affects the patient's bowel movements, creating the need for frequent visits to the bathroom within short notice. (*Id.* at ¶ 3.3)

modation and the harassment towards her. (*Id.* at ¶ 3.20).

Plaintiff alleges that, instead of solving the situation, her complaint to HEEND caused Gómez to take the first retaliatory action against Plaintiff when Gómez informed Plaintiff, on Sunday March 15, 2009, that a meeting had been scheduled for the next day, Monday, March 16, 2009. Plaintiff avers that, because of the unusual method used to call for the meeting, Plaintiff anticipated that it would be a showdown with Gómez, creating additional anxiety, causing her medical condition to worsen. (*Id.* at ¶ 3.21–3.22). The day of the meeting, Plaintiff arrived early and met with HEEND representatives, who informed her, that Gómez would meet her at 9:00 am. (*Id.* at ¶ 3.23). When Plaintiff returned from the bathroom, arriving at the meeting area at 8:50 am, she learned that Gómez had already asked "where is she?" and "has she shown up?" (*Id.* at ¶ 3.24). Plaintiff explains that, because she was very nervous and afraid of reprisals, she remained seated throughout the complete meeting without taking the necessary bathroom breaks. When Plaintiff stood from the chair, she realized that she had soiled herself and had to go home to change. (*Id.* at ¶ 3.26). That same day, Plaintiff filed a discrimination/ retaliation complaint at the Humacao branch of the Puerto Rico Office of the Solicitor of Disabled Persons. (*Id.* at ¶ 3.27). After changing clothes and filing the complaint, Plaintiff returned to her office at 1:30 pm and requested that the time used to change clothes be charged to her medical leave. (*Id.* at ¶ 3.28).

That same afternoon, Plaintiff was asked to complete a formal request, for reasonable accommodation. (*Id.* at ¶ 3.29). Plaintiff agreed to fill out the requested form, although she had already been receiving accommodations since 2006. (*Id.* at ¶ 3.29–3.30). She, nevertheless, completed the requested form with a letter from her physician, Dr. Rios Collazo, and noted that said form was designed for an external, rather than internal, condition. (*Id.* at ¶ 3.31). Subsequently, Defendant denied the requested accommodation and withdrew the accommodation already granted. (*Id.* at ¶ 3.32).

On March 30, 2009, Plaintiff found an open letter on her desk, dated March 18th, in which Gómez questioned Plaintiff's bathroom breaks of March 16th. (*Id.* at ¶ 3.33). Plaintiff took this letter to the HEEND which, subsequently, took the matter to the Dean because Gómez allegedly refused to meet with them. (*Id.* at ¶ 3.34). The Dean's office, in turn, referred the matter to the Human Resources department through the Dean's Assistant, Professor Oscar Rodríguez. (*Id.* at ¶ 3.35).

The next day, March 31, 2009, Professor Rebeca Díaz asked Plaintiff to write a letter stating that she was protected by the ADA, as per instructions of the institution's attorney, who allegedly said that there was nothing he could do about the situation. (*Id.* at ¶ 3.36). Díaz told Plaintiff that she would ask for mediation help from the Dean of Academic Affairs. (*Id.* at ¶ 3.37).

In a letter, dated April 15, 2009, Gómez accused Plaintiff of using certain designs in a proposal document without authorization. (*Id.* at ¶ 3.38). Plaintiff alleges that the ASDC logo she used had been in place since 2006 and that there were no directives regarding designs in that proposal. (*Id.* at ¶ 3.39).

Plaintiff asserts that, at least twice in April of 2009, Gómez confronted her regarding her medical visits, which imposed additional stress on Plaintiff. Because Crohn's Disease is worsened by stress, this aggravated her condition. (*Id.* at ¶ 3.40). Plaintiff claims that the additional stress

caused her to soil herself on various occasions. (*Id.* at ¶ 3.40).

Subsequently, after Plaintiff filed a discrimination charge under the ADA before the Equal Employment Opportunity Commission (hereinafter "EEOC") on April 27, 2009 and added a retaliation charge on May 21, 2009 (*Id.* at ¶ 3.41). Plaintiff affirms that, after filing the EEOC charges, the retaliation campaign worsened by continuing to question her medical leaves and bathroom visits, creating a hostile working environment, removing the only clerical assistant that helped Plaintiff, bypassing Plaintiff for assignments, meetings and training seminars, total inaction of the UPR despite her claims with the HEEND and Plaintiff's compliance with the established procedures. (*Id.* at ¶ 3.43).

On August 31, 2009, Plaintiff was told that her contract would not be renewed, making her termination effective on September 30, 2009. (*Id.* at ¶ 3.44–3.45). Plaintiff consequently filed her complaint in the instant case in the District Court of Puerto Rico against the University of Puerto Rico (hereinafter "UPR") and former supervisor, Professor Gómez, on February 12, 2010. (Docket No. 1).

## IV. ANALYSIS

### A. Retaliation (Title V) Claims: Independent or Underlying Cause Required?

The present action is a retaliation (Title V) claim under the ADA. Defendant alleges that this Court lacks subject matter jurisdiction over the instant case because it is barred by Eleventh Amendment immunity, extended to the UPR as an arm of the state. (Docket No. 16). Defendant further avers that the suit against Co–Defendant Gómez in her official capacity, based upon Title V of the ADA or Section 1983, is equally barred by the Eleventh Amendment as it is a claim against the UPR. (Docket No. 16, at 7). Plaintiff, on the other hand, asserts that the present action is solely a retaliation claim brought independent of any claims arising under other Titles of the Act and, therefore, should not be barred by sovereign immunity.

Defendant alleges that, while Plaintiff affirms that the suit was filed solely under Title V of the ADA, because this retaliation claim is based on an allegation of employment conditions that resulted in alleged discrimination on basis of disability, it must be treated as a claim fundamentally based on Title I of the ADA, which governs claims of employment discrimination. (Docket No. 22). Defendant further cites cases decided by other Circuits in which Eleventh Amendment Immunity was extended from Title I claims to Title V suits to conclude that this Court is barred from entertaining the instant action.

Thus, the issue currently before the Court is whether an independent retaliation claim under Title V against an arm of the State is barred by the state's Eleventh Amendment immunity when the events that motivated the claim occurred in the place of employment. Before addressing this ultimate issue, however, the Court must first determine whether a Title V claim may proceed without an underlying cause arising under another Title, as Plaintiff asserts.

The ADA was enacted, in part, to address discrimination and to offer remedies to persons with disabilities in the areas of employment, access to public facilities, and transportation services. 42 U.S.C. §§ 12101–213. The Act is divided into three main subchapters, known as "Titles", and one relevant fourth subchapter known as "Title V" which is titled "Miscellaneous Provisions." *See Edwards v. Brookhaven Science Associates, LLC,* 390 F.Supp.2d 225, 234–235 (E.D.N.Y.2005). Title I of the Act forbids discrimination against the

disabled in the terms and conditions of employment. 42 U.S.C. § 12112; Title II prohibits discrimination against the disabled in access to public services, 42 U.S.C. § 12132; and Title III of the ADA proscribes discrimination against the disabled in public accommodations, 42 U.S.C. § 12182. *Edwards*, 390 F.Supp.2d at 234.

The retaliation provision contained in Title V, section 12203, prohibits retaliatory discrimination against a person who has opposed any act or practice already prohibited by the ADA. 42 U.S.C. § 12203(a). The statute specifically details the conditions under which the corresponding claims will be redressed, stating that: "[t]he remedies and procedures available under sections 12117, 12133, and 12188 of this title shall be available to aggrieved persons for violations of subsections (a) and (b) of this section, *with respect to* subchapter I, subchapter II and subchapter III of this chapter, respectively". 42 U.S.C. § 12203(c) (emphasis ours).

Through its clear language, the retaliation provision states that, in order for the remedies provided to be available, the claim *must* arise as a result of a violation of one of the *three* previous chapters, Title I, II or III. Therefore, affording a plain meaning reading to the statute, the Court finds that a retaliation claim may not arise on its own, wholly independent of an underlying cause of action. Rather, under the plain language of the statute, the claim must relate to an underlying cause established in one of the three previous Titles. A retaliation claim must be filed by a person who has opposed an act or practice prohibited by the ADA because of discrimination in employment, in access to public services, or in public accommodations. A retaliation claim under ADA must, therefore, have an underlying cause contained in one of the previous Titles. Consequently, the Court concludes that all ADA retaliation claims (Title V) must arise

from an alleged violation of Title I, Title II or Title III.

Title V's retaliation section states that "[n]o person shall discriminate against any individual ... because such individual made a charge, ... under this chapter." 42 U.S.C. § 12203(a). In order for Plaintiff to activate the retaliation provision, she must have complained about a violation of the ADA. Defendant allegedly removed and denied reasonable accommodation at Plaintiff's workplace, action regarded as employment discrimination, prohibited by Title I of the ADA. According to Plaintiff's allegations, Defendant's allegedly retaliative behavior was triggered by her complaint about Defendant's employment discrimination incurred when removing reasonable accommodation. *See Castro v. Fajardo*, 133 F.Supp.2d 143 (D.P.R.2001) (addressing a Title V claim as raising under Title I where a reasonable accommodation request by a public employee at the workplace resulted in alleged retaliative behavior by employer); *see also Demshki v. Monteith*, 255 F.3d 986, 988 (9th Cir. 2001) (holding that *Garrett's* immunity holding must necessarily be extended to claims brought under Title V of the ADA, where the assertions are predicated on alleged violations of Title I.)

Even though Plaintiff avers that the instant retaliation claim does not arise under Title I of the ADA, the events that motivated the retaliation action occurred at Plaintiff's place of employment and are related thereto.

Accordingly, the Court concludes that the present retaliation claim arises from the employment discrimination provision, Title I.

**B. Eleventh Amendment Immunity on Title V Claims**

The Eleventh Amendment bars citizens from suing states, including Puerto

Rico, in federal courts for monetary damages unless the state being sued waives its immunity or consents to be sued. *Rossi–Cortes v. Toledo–Rivera*, 540 F.Supp.2d 318, 324–325 (D.P.R.2008).

■ However, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). "This standard allows courts to order prospective relief, as well as measures ancillary to appropriate prospective relief." *Frew v. Hawkins*, 540 U.S. 431, 437, 124 S.Ct. 899, 157 L.Ed.2d 855 (2004) (internal citations omitted).

"[T]he Eleventh Amendment [also] bars federal courts from hearing suits against state agents and state agencies absent waiver or abrogation of sovereign immunity." *Phillips v. Conrad*, Civ. No. 10–40085–FDS, 2011 WL 309677 at *4 (D.Mass., January 28, 2011)(citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)).

■ Puerto Rico is considered a state for Eleventh Amendment immunity purposes and, accordingly, the relevant sovereign immunity jurisprudence applies. *Toledo v. Sanchez*, (1st Cir.2006) 454 F.3d 24, *certiorari denied* 549 U.S. 1301, 127 S.Ct. 1826, 167 L.Ed.2d 356 (2007). Federal Courts 265; *See*, e.g., *De Leon Lopez v. Corporacion Insular de Seguros*, 931 F.2d 116, 121 (1st Cir.1991); *Ramirez v. Puerto Rico Fire Serv.*, 715 F.2d 694, 697 (1st Cir.1983);

■ Generally, a state's immunity may be extended to a state-created entity that functions as an "arm of the state", depending primarily on "whether it performs a governmental function, whether it functions with substantial autonomy, to what extent it is financed independently of the state treasury, and if a judgment sought to be entered against the [entity] will be satisfied out of the state treasury." *In re San Juan Dupont Plaza Hotel Fire Litigation*, 888 F.2d 940, 942 (1st Cir. 1989), (citing *Figueroa–Rodriguez v. Aquino*, 863 F.2d 1037, 1042 (1st Cir.1988); *Culebras Enterprises Corp. v. Rivera Rios*, 813 F.2d 506, 517 (1st Cir.1987)). It is well settled that the University of Puerto Rico is considered an "arm of the state" for Eleventh Amendment purposes. *Pinto v. Univ. of P.R.*, 895 F.2d 18, 18 (1st Cir.1990); *Negron Gaztambide v. Hernandez Torres*, 145 F.3d 410 (1st Cir.1998). Hence, it is not contested that the University of Puerto Rico, as an arm of the state, enjoys extended Eleventh Amendment immunity, when applicable.

■ "However, Eleventh Amendment immunity is not absolute and may be waived by the state or "stripped away" by Congress." *Gonzalez–Droz v. Gonzalez–Colon*, 717 F.Supp.2d 196, at 207 (D.P.R. 2010). "[T]he Eleventh Amendment protection unravels: (1) when a state consents to be sued in a federal forum; (2) when a state waives its own immunity by statute or the like; (3) when Congress abrogates state immunity ("so long as it speaks clearly and acts in furtherance of particular powers")" *Id.*

UPR contends that it is immune of suit under the Eleventh Amendment as they have not waived its sovereign immunity under the Eleventh Amendment.

Because the instant retaliation action must be addressed as one arising from Title I, the sole remaining question is whether a Title V claim, arising from a Title I violation provides a valid abrogation of Eleventh Amendment immunity. If it indeed provides such an abrogation, then Plaintiff's Title V retaliation claim shall proceed and Plaintiff be entitled to compensatory and/or punitive damages. If no such abrogation exists, however, then De-

fendant may indeed invoke the Eleventh Amendment to shield itself from such damages in the instant case.

 The present is a Title V retaliation claim under the ADA which, through its clear language, abrogates sovereign immunity. 42 U.S.C.A. § 12203. Nevertheless, when analyzing the required violation needed to raise the retaliation claim, we find that the underlying cause of the retaliation claim is Title I, for which the Eleventh Amendment sovereign immunity is not abrogated. In fact, the Supreme Court has already established that claims for monetary damages in Federal Court against the State for employment discrimination (Title I) under ADA are barred by the Eleventh Amendment immunity. *Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). Plaintiff notes that neither the Supreme Court nor the First Circuit[2] have yet addressed the question of whether the holding in *Garrett, supra*, that ADA Title I suits in federal court by state employees to recover money damages are barred by the Eleventh Amendment, should be extended to Title V suits of the ADA as well. (*See* Docket No. 18, at 1). Thus, this Court will proceed to analyze the issue in detail to determine whether a Title V retaliation claim under Title I of the ADA is barred by sovereign immunity.

As, in order abrogate immunity through a retaliation claim (Title V), there must a violation to one of the first three Titles of the ADA, an apparent conflict between Congress' intentions and the Judicial interpretation is present when addressing the case at bar.

In 2001, this Court ruled on a case, involving a retaliation claim under ADA, exactly one day after *Garrett's* decision. Therein, the Court extended *Garrett's* holding regarding sovereign immunity to Title V claims arising under Title I. *Castro Ortiz v. Fajardo*, 133 F.Supp.2d 143, 145 (D.P.R.2001). Likewise, in *Flax v. Delaware Div. of Family Services.*, 2008 WL 1758857 (D.Del.2008), the Court held that that compensatory and liquidated damages were barred by sovereign immunity on a retaliation claim under the ADA, among other actions, where the alleged events occurred at Plaintiffs employment. In that case, plaintiff merely claimed damages rather than job reinstatement or accommodation for his disability.

Further, in *Demshki v. Monteith*, 255 F.3d 986, 988–89 (9th Cir.2001), cited by Defendant, a Title V claim filed by a legislative employee, the Court found that a "retaliation claim under Title V of the ADA was barred by the Eleventh Amendment" because the ADA's legislative record did not show a pattern of state discrimination against employees who opposed unlawful employment discrimination against disabled individuals, validly abrogating state immunity. According to *Garrett*, Congress may not abrogate sovereign immunity "[a]bsent a history of such evil by the states". *Demshki v. Monteith*, 255 F.3d 986 (2001).

The legislative record of the ADA did not support abrogation of the states' Eleventh Amendment immunity from suits for money damages under Title I of the ADA; *Garrett*, 531 U.S. at 368, 121 S.Ct. 955 (2001).

Other Courts, in contrast, have determined that there is no Eleventh Amendment immunity for retaliation claims when

---

**2.** The Court notes that one District Court in the Fifth Circuit, whose jurisprudence relating to employment law cases this Circuit usually follows, has already extended the ruling in *Garrett* to encompass Title V claims. *Shabazz v. Texas Youth*, 300 F.Supp.2d 467, 472 (N.D.Tex.2003).

employment related. The Supreme Court has already determined that retaliation claims under Title II, access to public services, are a valid abrogation to sovereign immunity regarding access to the courts. *Tennessee v. Lane*, 541 U.S. 509, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004). Some District Courts have applied *Lane's* decision to certain Title V claims in public employments, under special circumstances, abrogating sovereign immunity. In 2007, the North District of West Virginia District Court, determined that "Congress had validly abrogated immunity under Title II of the ADA as it applies to public higher education" in a case of reasonable accommodation claim for a Title II violation, rather than Title I. *Sarkissian v. West Virginia University Bd. of Governors*, 2007 WL 1308978, *8 (N.D.W.Va.2007). Although the plaintiff in that case was employed by the state, the Court concluded that plaintiff's position of medical resident was more "akin to a program of higher education than an employment position", thus, applied Title II instead of Title I and considered the Title V claim as a valid abrogation of sovereign immunity. *Id.* at *8.

In another case, the Eleventh Circuit permitted a Title V claim to proceed against the Department of Corrections, based on allegations of employment discrimination, where the defense did not raise the sovereign immunity defense. *Rumler v. Department of Corrections, Florida*, 546 F.Supp.2d 1334, 1342 –1343 (M.D.Fla.2008). The Court decided that the plaintiff was entitled to seek compensatory and punitive damages, and to demand trial by jury on an ADA retaliation claim in the employment context. *Id.*

Upon careful review of the jurisprudence above, the Court herein shall follow the precedent already set in this District by *Castro Ortiz*, particularly in light of the Ninth Circuit's determination that the legislative record supports such an outcome. Thus, the Court finds that the sovereign immunity analysis in the instant Title V retaliation claim shall be governed by the applicability of sovereign immunity of the underlying Title I claim. The Court sees no reason why this rule should not apply with equal force where, as in the instant case, a plaintiff does not join her claim of retaliation to the allegedly violative and discriminatory behavior which preceded the retaliative behavior. Such an outcome would encourage plaintiffs who bring Title V retaliation claims to deliberately fail to include their accompanying claims of discrimination when those claims are susceptible to the invocation of sovereign immunity.

The Court holds, therefore, that immunity for retaliation claims, thus, depends on the context in which the alleged retaliation arose.

Because the Supreme Court has already held that ADA Title I does not contain a valid abrogation of the state's Eleventh Amendment sovereign immunity and, because Plaintiff's claim arises from Title I, the Court finds that the present action is barred by the Eleventh Amendment immunity. That is to say, the Court must find that no such abrogation exists for Plaintiff's Title V claim as it arises from underlying conduct that falls within the parameters of Title I. Because Eleventh Amendment immunity prevents citizens from collecting monetary damages, Plaintiff's only surviving claim would be for prospective equitable and/or injunctive relief, such as back pay and job reinstatement. *See Wilson v. Executive Office of Health and Human Services*, 606 F.Supp.2d 160 (D.Mass.2009)(citing *Garrett*, 531 U.S. 356, 363, 121 S.Ct. 955). *See also Garrett*, 531 U.S. 356, 374, 121 S.Ct. 955 (2001) (holding that although there are no collectable damages under ADA Title I,

a private citizen may still enforce the ADA against a State through injunctive relief).

**Damages**

Section 1981(a) states that a complaining party may not recover punitive or compensatory damages from claims brought under Title I against the "government, government agency or political subdivision", 42 U.S.C. § 1981a (b)(1) [3].

"Compensatory damages available in ADA Title I are those granted for emotional pain and suffering, *Corbett v. National Products Co.*, 9 A.D.D. 23, 4 A.D. Cas. (BNA) 987 (E.D.Pa.1995), including emotional distress, inconvenience, mental anguish, and loss of the enjoyment of life. *Hogan v. Bangor and Aroostook R. Co.*, 61 F.3d 1034, 11 A.D.D. 1, 4 A.D. Cas. (BNA) 1251 (1st Cir.1995); *Fox v. General Motors Corp.*, 247 F.3d 169, 11 A.D. Cas. (BNA) 1121 (4th Cir.2001). However, compensatory damages are exclusive of back pay, interest on back pay, or any other type of relief authorized. 42 U.S.C.A. § 1981a(b)(2)."

AMERICANS WITH DISAB.: PRACT. & COMPLIANCE MANUAL § 7:520

Thus, compensatory damages are not available for claims related to employment discrimination under the ADA.

■ Punitive damages are not available for violation of ADA's retaliation provision, 42 U.S.C.A. § 12203. *Kramer v. Banc of America Securities, LLC*, 355 F.3d 961, 15 A.D. Cas. (BNA) 141, 57 Fed. R. Serv.3d 1133 (7th Cir.2004), cert. denied, 542 U.S. 932, 124 S.Ct. 2876, 159 L.Ed.2d 798 (2004); *Johnson v. Ed Bozarth No.1 Park Meadows Chevrolet, Inc.*, 297 F.Supp.2d 1286, 15 A.D. Cas. (BNA) 252 (D.Colo.2004); *Sink v. Wal-Mart*

*Stores, Inc.*, 147 F.Supp.2d 1085 (D.Kan. 2001); *Sabbrese v. Lowe's Home Centers, Inc.*, 320 F.Supp.2d 311 (W.D.Pa.2004). In a subsequent motion, Plaintiff already admitted that punitive damages were not available against the Defendant under the ADA. (Docket No. 18, at 10). Thus, punitive damages are explicitly unavailable for retaliation claims and Plaintiff voluntarily desisted of this claim.

■ Accordingly, because the underlying cause of the present retaliation claim is ADA Title I, this Court finds that compensatory damages are not be available for a retaliation claim when arising from Title I under the ADA. Hence, punitive and compensatory damages are not available for an ADA retaliation claim under Title I.

**Equitable relief not barred by Eleventh Amendment Immunity**

Although sovereign immunity bars citizens from recovering monetary damages from state in federal court, equitable relief is not barred by Eleventh Amendment immunity. *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993); *Chaulk Serv., Inc. v. Mass. Com'n*, 70 F.3d 1361 (1st Cir.1995).

Eleventh Amendment immunity does not bar suits for prospective declaratory, equitable or injunctive relief against the state officers in their official capacity. *Ex Parte Young*, 209 U.S. 123, 160, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *see also Mills v. Maine*, 118 F.3d 37, 54 (1st Cir.1997).

"Because [Plaintiff] was not entitled to recover compensatory and punitive damages, [thus, restrained of] statutory or con-

---

**3.** (b)(1) *Determination of punitive damages:* A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

stitutional right to a jury trial[, t]he only remedies ... [that] any plaintiff bringing a claim of retaliation against an employer under the ADA [is] entitled to seek, [are] equitable in nature." *Kramer v. Banc of America Securities, LLC*, 355 F.3d 961, 966 (7th Cir.2004); *see also Panzardi–Santiago v. University of Puerto Rico*, 200 F.Supp.2d 1, at 22 (D.P.R.2002).

 Plaintiff's only surviving ADA retaliation claim is now limited to seeking back pay and injunctive relief for employment repossession, (Docket No. 1, at 4.2), which is for the Court to adjudicate. Thus, Plaintiff's claim for prospective equitable and/or injunctive relief should be maintained at this point.

Accordingly, after accepting as true all well-pleaded factual claims and indulging all reasonable inferences in favor of Plaintiff, the Court finds that Plaintiff has provided enough factual allegations to plausibly establish a *prima facie* case of retaliation against Co–Defendant UPR, thus, Defendant's *Motion to Dismiss* Plaintiff's retaliation claim must be **GRANTED** as for monetary damages and **DENIED** as for prospective equitable and/or injunctive relief.

## V. CONCLUSION

Defendant argues that Plaintiff's claim should be dismissed in its entirety because of Sovereign Immunity protection. This request does not have merit as Eleventh Amendment only precludes from collecting monetary damages in federal court and Plaintiff has also requested equitable relief from both co-defendants.

For the reasons stated above, the Court finds that Plaintiff's Title V claim against Co–Defendant UPR for compensatory and punitive damages should and is hereby, **DISMISSED.**

However, Plaintiff's Title V claim against Co–Defendant UPR for back pay and job reinstatement will be sustained.

For the foregoing reasons, Defendant's *Motion to Dismiss* (Docket no. 16) is hereby **GRANTED** in part and **DENIED** in part. Defendant is ordered to answer the *Complaint* on or before **April 12, 2011. IT IS SO ORDERED.**