Felipe **CARDONA ROMÁN,** Plaintiff,

v.

**UNIVERSITY OF PUERTO RICO,
et al.,** Defendants.

**Civil No. 10–1363(DRD).**

United States District Court,
D. Puerto Rico.

July 27, 2011.

Order Granting Reconsideration
August 9, 2011.

May 1, 2010 (Docket No. 1) against Defendant University of Puerto Rico ("UPR") and Defendants Antonio Garcia Padilla ("Garcia Padilla"), Jose De La Torre ("De La Torre"), Gladys Escalona De Motta ("Escalona"), Ana R. Guadalupe ("Guadalupe"), Jose Juan Estrada ("Estrada"), Orlando Ruiz ("Ruiz"), Bienvenido Flores ("Flores"), Jazmin Ocasio ("Ocasio"), Alberto Feliciano ("Feliciano"), and Edgardo Rodriguez ("Rodriguez") (collectively, the "Individual Defendants") alleging retaliation and discrimination on the basis of an alleged disability. Plaintiff brings this action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, Section 1983 of the Civil Rights Act, 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and Puerto Rico Act No. 44 of July 2, 1985 ("Law 44").

Defendants have filed three separate motions to dismiss (Docket Nos. 44, 45, and 46) each asserting Eleventh Amendment immunity.

Manuel R. Suarez–Jimenez, Manuel R. Suarez Law Office, San Juan, PR, Miriam Gonzalez–Olivencia, Miriam Gonzalez Olivencia Law Office, Guaynabo, PR, for Plaintiff.

Luis Fernando Llach–Zuniga, Jorge A. Antongiorgi, McConnell Valdes, San Juan, PR, for Defendants.

### AMENDED OMNIBUS OPINION AND ORDER

DANIEL R. DOMÍNGUEZ, District Judge.

### I. INTRODUCTION

Plaintiff Felipe Cardona Román ("Cardona" or "Plaintiff") filed a complaint on

### II. RELEVANT FACTUAL BACKGROUND

On January 8, 2003, the UPR hired Cardona as an Electrician Supervisor at the Office for the Conservation of the University Installations ("OCIU"). From the very beginning of his employment, Cardona alleges that he noticed certain irregularities, such as equipment disappearing and department personnel ordering unnecessary equipment. He also claims that there were improper and dangerous work conditions. Cardona argues that he reported these irregularities in a sworn statement to the administration, but that the OCIU never took any action. After filing this complaint, Cardona asserts that he was denied routine equipment and an

adequate motor vehicle which was needed to transport necessary supplies for his work. Other OCIU supervisors were always provided with their own vehicles.

Cardona alleges that he was forced to work under dangerous conditions in spite of notifying his bosses about these conditions. Plaintiff avers that Ruiz, the Supervisor of the Electrical Division at OCIU, and Rodriguez, the Director of the OCIU, refused to grant him overtime, although he was willing and able to perform overtime. Additionally, Ruiz allegedly refused to perform a work evaluation on Cardona at the end of his probationary term. Cardona also claims that Ruiz screamed at him in front of his coworkers, causing Cardona great humiliation.

Plaintiff claims that as a result of these events, he suffered emotional anguish and heart and back issues requiring hospitalization. Cardona alleges that he once again notified the UPR administration of his unsafe working environment, but no action was ever taken.

Cardona asserts that, even after he submitted his complaints to the UPR administration, Ruiz continued to withhold materials[1] needed to perform his duties. He further alleges that Ruiz also held up his applications for material requests because Ruiz wanted to delay Cardona's work assignments. When Ruiz was questioned about the delay by Cardona's coworkers, Ruiz supposedly placed the blame on Cardona. Additionally, Cardona avers that when he reported unfavorable conditions about the electrical installations of the UPR, the reports were destroyed. Cardona further claims that he was mocked by his co-workers, because Ruiz constantly requested to know his whereabouts, more than any other co-workers.

Cardona states that his psychiatrist recommended that he resign his supervisory position. Following his doctor's orders, Cardona voluntarily stepped down from his supervisory position. However, Cardona still works at the UPR as an electrical assistant, which is the same position he used to supervise. Cardona claims that as a result of his resignation, his depression increased, causing his health to further deteriorate. Cardona avers that he was prescribed drugs for the depression that damaged his digestive system and increased his blood pressure.

After undergoing two hospitalizations, Flores, a Supervisor in OCIU's Electrical Division, allegedly informed Cardona that he was not allowed to work overtime since "he had too many absences." Flores alleged that he acted under Ruiz and Rodriguez's orders. However, Cardona claims that he always had a positive balance of both sick and vacation days. Additionally, Ruiz allegedly referred to Cardona as "worthless"[2] and openly discussed Cardona's medical conditions with Cardona's coworkers.

Cardona was evaluated by Dr. Fernando Ortiz Franco, a UPR physician. Dr. Franco, in two different letters and in a telephone conversation, allegedly explained to Ruiz and Rodriguez that Cardona required accommodations in order to be able to perform his professional duties. Ruiz and Rodriguez also allegedly informed Flores of Dr. Franco's assessment, but failed to provide accommodations to Cardona.

Cardona made a formal verbal complaint at the Office of the Affirmative Action Officer, directed by Jazmin Ocasio, on

---

1. Plaintiff fails to specify which materials were withheld by Ruiz.

2. Plaintiff fails to state when it was that Ruiz allegedly referred to Cardona as "worthless," and to whom Ruiz made these comments.

January of 2008, followed by a written complaint in February of 2009. No investigation ensued. On September 30, 2009, Cardona filed a complaint with the Equal Employment Opportunity Commission and was granted a right to sue letter on February 2, 2010.

## III. PROCEDURAL HISTORY

Cardona filed a complaint on May 1, 2010 (Docket No. 1). Cardona claims that, as a result of Defendants actions, his emotional condition deteriorated, causing him mental anguish, as well as physical problems, including increased blood pressure and damages to his digestive system. Plaintiff also asserts that Defendants have not provided him with the reasonable accommodations as his disability requires.

On May 5, 2011, UPR filed a motion to dismiss (Docket No. 44) alleging that the Eleventh Amendment of the Constitution shields the University from liability. UPR states that, as a public university that receives the majority of its funding from the government of Puerto Rico, it is an instrumentality of the Commonwealth of Puerto Rico; thus qualifying as an "arm" of the state for Eleventh Amendment purposes.

On May 16, 2011, Defendants De La Torre and Guadalupe filed a motion to dismiss (Docket No. 45) and on May 20, 2011, Defendants Estrada, Ruiz, Flores, Ocasio, and Feliciano filed a motion to dismiss (Docket No. 46). Both motions to dismiss assert Eleventh Amendment immunity. Individual Defendants claim that the Eleventh Amendment extends not only to the states, but also to instrumentalities of the state and state's employees acting in their official capacity. Individual Defendants further argue that no personal liability exists under Title VII, the ADA, or Act 44.

## IV. STANDARD OF REVIEW FOR MOTIONS TO DISMISS

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R.CIV.P. 8(a)(2). Under *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." Thus, a plaintiff must now present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). *Id.* at 570, 127 S.Ct. 1955; *see e.g. Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by *Twombly*, 550 U.S. 544, 127 S.Ct. 1955, and *Iqbal*, 129 S.Ct. 1937. "Context based" means that plaintiff must allege facts that comply with the basic elements of the cause of action. *See Iqbal*, 129 S.Ct. at 1949–1950 (explaining the basic elements of a *Bivens* claim and thereafter concluding that facts were not sufficiently provided, leaving only conclusory statements). First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir.2009) (quoting *Iqbal*, 129 S.Ct. 1937) (internal quotation omitted).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." *Id.* This second step is "con-

text-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. *Id.* Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." *Sanchez v. Pereira–Castillo*, 590 F.3d 31, 41 (1st Cir. 2009).

■ A complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996). Similarly, unadorned factual assertions are inadequate as well. *Penalbert–Rosa v. Fortuno–Burset*, 631 F.3d 592 (1st Cir.2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." *Id.* at 596.

## V. ANALYSIS

■ The Court notes as an initial matter that Plaintiff has failed to oppose Defendants' motions to dismiss and, accordingly, has waived any future objection.[3] *See* Local Rule 7(b). Nevertheless, the Court has an obligation to review an unopposed motion to dismiss on its merits. When deciding a motion to dismiss, "the mere fact that a motion to dismiss is unop-

posed does not relieve the district court of the obligation to examine the complaint itself to see whether it is formally sufficient to state a claim." *Vega–Encarnacion v. Babilonia*, 344 F.3d 37, 41 (1st Cir.2003). *See Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 52 (1st Cir. 1990) (A district court may grant a motion to dismiss only if "it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory."). *See also Pomerleau v. W. Springfield Pub. Sch.*, 362 F.3d 143, 145 (1st Cir.2004) (The District Court "may not automatically treat a failure to respond to a motion to dismiss as a procedural default.").

## A. ADA CLAIMS

### i) CLAIMS APPLIED TO UPR

The ADA is divided into three main subchapters known as "Titles" and one relevant subchapter, known as Title V. Title I forbids discrimination against individuals with disabilities in the terms and conditions of employment; Title II prohibits discrimination against the impaired in access to public services; and Title III proscribes discrimination against disabled individuals in public accommodations. 42 U.S.C. §§ 12112, 12132, 12182; *see Collazo–Rosado v. Univ. of P.R.*, 775 F.Supp.2d 376, 383–84 (D.P.R.2011).

■ Title I of the ADA generally prohibits an employer from discriminating against an employee with a disability.[4] 42

---

3. On July 26, 2011, Plaintiff submitted an opposition to UPR's motion to dismiss (Docket No. 51). On the same day, July 26, 2011, Plaintiff additionally requested extension of time to reply to the other two pending motions to dismiss (Docket No. 52). The Court struck Plaintiff's opposition to UPR's motion to dismiss as untimely (Docket No. 51), and denied the extension of time to reply to the other two motions to dismiss (Docket No. 52), because these filings were well outside of the

time periods permitted by Local Rules or the Federal Rules of Civil Procedure (Docket No. 53).

4. Title I of the ADA states that "no covered entity shall discriminate against a qualified individual with a disability ... in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation ... and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

U.S.C. § 12112(a). The ADA also imposes on employers an affirmative duty to offer reasonable accommodation to an impaired, but otherwise qualified individual. *Calero–Cerezo v. U.S. Dept. of Justice*, 355 F.3d 6, 20 (1st Cir.2004). "The Eleventh Amendment bars private money damages actions for state violations of ADA Title I, which prohibits discrimination against the disabled." *Tennessee v. Lane*, 541 U.S. 509, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004).[5] Therefore, the Commonwealth of Puerto Rico, and consequently the UPR, are immune to all monetary claims filed under Title I. *Torres–Alamo v. Puerto Rico*, 502 F.3d 20 (1st Cir.2007).

In the instant matter, Plaintiff only sued under Title V,[6] not Title I. The UPR claims that it is immune from suit under the ADA, but the First Circuit has yet to rule on whether the Eleventh Amendment immunity applies to Title V as it does to Title I. However, this Court recently held that the sovereign immunity analysis in a Title V retaliation claim is governed by the applicability of sovereign immunity of the underlying Title I, II, or III claim. *See Collazo–Rosado*, 775 F.Supp.2d at 387–88 (holding that the Eleventh Amendment immunity bars Title I employment discrimination claims against a state for monetary damages). The *Collazo–Rosado* court held that:

> "The retaliation provision states that, in order for the remedies provided to be available, the claim must arise as a result of a violation of one of the three previous chapters, Title I, II, or III.

Therefore ...,· a retaliation claim may not arise on its own, wholly independent of an underlying cause of action.... All ADA retaliation claims (Title V) must arise from an alleged violation of Title I, Title II, or Title III."

*Id.* at 384; *See* 42 U.S.C. § 12203(c).

Applying this case law, Cardona's Title V retaliation claim must arise out of either Title I, II, or III. Plaintiff's claims against the UPR arise from his employment at the UPR, as all of the alleged discriminatory acts occurred during the course of Plaintiff's employment. Cardona has been employed by the UPR since 2003, and the supposed acts that occurred at Cardona's place of employment involved only his UPR supervisors conduct within the scope of their employment. Cardona alleges that the UPR did not comply with Dr. Franco's recommendations that they accommodate Plaintiff's work environment to better suit his needs. Therefore, the Court concludes that Cardona's Title V claims clearly arise out of Title I, the employment discrimination provision. 42 U.S.C. § 12112.

■ Since Plaintiff's Title V claim arises out of Title I, the sovereign immunity analysis in the instant case is governed by the applicability of sovereign immunity of Cardona's underlying Title I claim. Under Title I, the UPR is immune from suit because the Eleventh Amendment bars private money damages actions for state violations of ADA Title I. *See Tennessee*, 541 U.S. at 509, 124 S.Ct. 1978. As the Title V retaliation claim is gov-

---

**5.** In *Board of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001), the Supreme Court held that Congress exceeded its power to abrogate the states' Eleventh Amendment immunity from suits by private individuals brought pursuant to Title I of the ADA. The Court held that the legislative record of the ADA failed to show that Congress identified a pattern of irrational state discrimination in employment against the disabled.

**6.** The retaliation provision of Title V states that "no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful [by the ADA]." 42 U.S.C. § 12203(a).

erned by the applicability of sovereign immunity of the underlying Title I claim, and as Title I bars suit against state actors for monetary damages, Cardona's Title V claim for monetary damages is hereby **DISMISSED** with prejudice. Plaintiff's only surviving claim under the ADA is for injunctive relief and/or equitable relief. *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 73, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (stating that "since our decision in *Ex Parte Young*, we have often found federal jurisdiction over a suit against a state official when the suit seeks only prospective injunctive relief in order to end a continuing violation of federal law.") (internal citations omitted); *Mills v. State of Maine*, 118 F.3d 37, 54 (1st Cir.1997); *Negron–Almeda v. Santiago*, 579 F.3d 45, 52 (1st Cir.2009). "Equitable relief is an authorized remedy, notwithstanding Eleventh Amendment barring applicability of ADA and ADEA to the states." *Vizcarrondo v. Bd. of Trustees of Univ. of P.R.*, 139 F.Supp.2d 198, 202 (D.P.R.2001)

### ii) CLAIMS APPLIED TO INDIVIDUAL DEFENDANTS

■ The First Circuit and the Supreme Court have not yet decided whether there is individual liability under the ADA. *Vizcarrondo*, 139 F.Supp.2d at 205. However, other Circuits, and this district, have concluded that the ADA does not provide for individual liability, but only for employer liability. *Id.; see Spiegel v. Schulmann*, 604 F.3d 72 (2d Cir.2010); *see also Figueroa v. Fajardo*, 1 F.Supp.2d 117 (D.P.R.1998) (stating that "this conclusion has been reached by utilizing precedents interpreting the term 'employer' as used in Title VII . . . 42 U.S.C. § 2000e(b) and in the Age Discrimination in Employment Act, 29 U.S.C. § 630(b) which the courts have found analogous to the definition of

'employer' in ADA."); *Mason v. Stallings*, 82 F.3d 1007 (11th Cir.1996); *Wathen v. Gen. Elec. Co.*, 115 F.3d 400 (6th Cir.1997); *Julia v. Janssen, Inc.*, 92 F.Supp.2d 25, 28–29 (D.P.R.2000); *Anonymous v. Legal Services Corp. of P.R.*, 932 F.Supp. 49, 50 (D.P.R.1996).

The ADA forbids discrimination by any "covered entity" defined as "an employer, employment agency, labor, organization, or joint labor-management committee." 42 U.S.C. §§ 12112(a), 12111(2). "Employer" is defined as a "person engaged in an industry affecting commerce . . . and any agent of such person." 42 U.S.C. § 12111(5)(A). The relevant provisions under the ADA are almost identical in language to that used in Title VII and the Age Discrimination in Employment Act (ADEA), both of which define "employer" as any "person engaged in commerce . . . [or] any agent of such person." 29 U.S.C. § 623(a), § 630(b); 42 U.S.C. § 2000e, § 2000e(b); *see Legal Services Corp. of P.R.*, 932 F.Supp. at 50. Although all three statutes provide that a supervisor is an employer, a number of courts have held that Congress included the phrase "any agent" to make sure that *respondeat superior* liability was imposed on the employers for the acts committed by their agents, not upon the agents personally. *Id.* at 50–51.

Accordingly, Plaintiff's ADA claims against the Individual Defendants are hereby **DISMISSED** with prejudice.

### B. TITLE VII CLAIMS AGAINST INDIVIDUAL DEFENDANTS

■ The First Circuit has held that there is no individual employee liability under Title VII. *Fantini v. Salem State College*, 557 F.3d 22 (1st Cir.2009) (holding that the definition of "employer" for Title VII purposes does not encompass individu-

al supervisors, even if such individuals are acting as agents of the employer).[7] " 'The statutory scheme of Title VII itself indicates that Congress did not intend to impose individual liability on employees.' " *Fantini*, 557 F.3d at 30 (quoting *Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583, 587 (9th Cir.1993)).

In the 1991 Amendments to Title VII, Congress added punitive and compensatory damages to the list of available remedies. *Id.* at 31. In *Fantini*, the Court concluded that Congress intended to limit Title VII liability to employers, because Congress linked the size of the employer with the amount of available monetary relief.[8] *Id.* (stating that "to permit individual liability would improperly expand the remedial scheme crafted by Congress."); *see also Miller*, 991 F.2d at 587 (concluding that "it is inconceivable that Congress intended to allow civil liabilities to run against individual employees.").

The case law dictates that the Individual Defendants cannot be held liable for a cause of action under Title VII, as Title VII does not provide for individual liability. Accordingly, the Court **GRANTS** Individual Defendants' motion to dismiss with prejudice Plaintiff's Title VII claims.

## C. SECTION 1983 CLAIMS

### i) INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITY

▮▮▮ States cannot be sued for monetary damages in federal court unless the state being sued waives its Eleventh Amendment immunity or consents to being sued. *See* CONST. amend. XI; *O'Neill v.*

*Baker*, 210 F.3d 41 (1st Cir.2000); *Ciampa v. Mass. Rehabilitation Com'n*, 718 F.2d 1 (1st Cir.1983); *Ezratty v. Puerto Rico*, 648 F.2d 770 (1st Cir.1981). "Absent waiver, neither a state nor agencies acting under its control may be subject to suit in federal court." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993). Furthermore, "neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action." *Johnson v. Rodriguez*, 943 F.2d 104, 108 (1st Cir.1991); *Wang v. N.H. Bd. of Registration in Medicine*, 55 F.3d 698, 700 (1st Cir.1995); *Vizcarrondo v. Bd. of Trustees of Univ. of P.R.*, 139 F.Supp.2d 198 (D.P.R.2001).

Puerto Rico has long been considered a state for Eleventh Amendment purposes. *Irizarry–Mora v. Univ. of Puerto Rico*, 647 F.3d 9 (1st Cir.2011); *See Metcalf & Eddy, Inc. v. P.R. Aqueduct & Sewer Auth.*, 991 F.2d 935 (1st Cir.1993). "The Eleventh Amendment bars the recovery of damages in a federal court against the Commonwealth of Puerto Rico, and, by the same token, it bars the recovery of damages in *official capacity* suits brought against Puerto Rico officials where recovery will come from the public fisc." *Culebras Enterprises Corp. v. Rivera Rios*, 813 F.2d 506, 516 (1st Cir.1987) (citing *Ramirez v. P.R. Fire Service*, 715 F.2d 694, 697 (1st Cir.1983) and *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)) (emphasis in the original); *Gerald v. Univ. of P.R.*, No. 08–2084, 2010 WL 1133856, at *3 (D.P.R. Mar. 22,

---

7. Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such a person." 42 U.S.C. § 2000e(b).

8. For example, companies that employ 200 workers are liable to each complainant for a maximum of $100,000 in compensatory and punitive damages while companies employing 100 workers are liable for a maximum of $50,000.

2010); *Maysonet–Robles v. Cabrero*, 323 F.3d 43 (1st Cir.2003).

The First Circuit and this Court have repeatedly held that the University of Puerto Rico is an "arm" of the Commonwealth and, thus, falls under Puerto Rico's Eleventh Amendment immunity. *See Irizarry–Mora*, 647 F.3d at 10–17; *Toledo v. Sánchez*, 454 F.3d 24, 31 (1st Cir.2006); *Silva v. Univ. of Puerto Rico*, 834 F.Supp. 553 (D.P.R.1993); *see Vizcarrondo*, 139 F.Supp.2d at 206. "Unless there is an explicit waiver of sovereign immunity, the UPR is immune from suit." *Panzardi–Santiago v. Univ. of Puerto Rico*, 200 F.Supp.2d 1, 24 (D.P.R.2002) (citing *Silva*, 834 F.Supp. 553).

In *Fresenius*, the First Circuit recently "examined Supreme Court decisions that had 'updated and clarified the arm-of-the-state doctrine' in the years since *Metcalf & Eddy* to determine 'whether those opinions cause [the First Circuit] to reshape the *Metcalf & Eddy* test.'" *Irizarry–Mora*, 647 F.3d at 12 (quoting *Fresenius Med. Care Cardiovascular Res., Inc. v. P.R. & the Caribbean Cardiovascular Ctr. Corp.*, 322 F.3d 56, 63 (1st Cir.2003)). The Court concluded that a reshaping was appropriate, and reformulated their prior analysis into a two-stage analytical framework structured to reflect "the Eleventh Amendment's twin concerns for the States' dignity and their financial solvency." *Irizarry–Mora*, 647 F.3d at 12 (citing *Fresenius*, 322 F.3d at 68).

■ Under the new two-stage framework, "a court must first determine whether the state has indicated an intention, either explicitly by statute or implicitly through structure of the entity, that the entity share the state's sovereign immunity. If no explicit indication exists, the court must consider the structural indicators of the state's intention." *Irizarry–Mora*, 647 F.3d at 12. If these indicators point in different directions, "the court must proceed to the second stage and consider whether the state's treasury would be at risk in the event of an adverse judgment." *Id.*

■ Employing this new two-step framework, the First Circuit recently held that the UPR is an "arm" of the Commonwealth, and is therefore afforded Eleventh Amendment immunity. *See Irizarry–Mora*, 647 F.3d at 16–17 (stating that "the Commonwealth's investment, financial, and otherwise, in the UPR's ability to fulfill its obligations of service to the people of Puerto Rico,' puts Commonwealth funds at risk when University funds are at risk.")(internal citations and quotations omitted). Thus, while the First Circuit established a new test for evaluating Eleventh Amendment immunity, the result for the UPR is consistent with the First Circuit's vast prior precedent also affording Eleventh Amendment protection. *Toledo*, 454 F.3d at 31; *Vizcarrondo*, 139 F.Supp.2d at 206; *Panzardi–Santiago*, 200 F.Supp.2d at 24; *Culebras Enterprises Corp.*, 813 F.2d at 516.

■ Representatives of the UPR are immune from suit in their official capacity under the Eleventh Amendment immunity afforded to the UPR as an "arm" of the state. *See Vizcarrondo*, 139 F.Supp.2d at 206; *see also Montalvo–Padilla v. Univ. of P.R.*, 492 F.Supp.2d 36, 43 (D.P.R.2007) (holding that "the protection afforded by the [Eleventh] Amendment extends not only to the states themselves, but also to their instrumentalities and government officials acting in that capacity.").

In the instant matter, the Individual Defendants are being sued in their official capacity. The Individual Defendants were acting in an official capacity as all of the alleged events occurred at the UPR, and as the alleged discrimination occurred

within the scope of employment of the Defendants, who were in charge of supervising Plaintiff. As representatives of the UPR acting in their official capacities are shielded from liability by the Eleventh Amendment, there can be no monetary liability under Section 1983 against Individual Defendants.[9] Accordingly, the Court **GRANTS,** with prejudice, Individual Defendants' motion to dismiss Plaintiff's Section 1983 claims against the UPR representatives in their official capacity.

### ii) INDIVIDUAL DEFENDANTS IN THEIR PERSONAL CAPACITY

■ Section 1983 does not create any independent substantive rights, but rather provides a cause of action or vehicle by which individuals may vindicate violations of their constitutional rights and/or rights protected by federal law. *Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Cruz–Erazo v. Rivera–Montañez,* 212 F.3d 617 (1st Cir.2000). Section 1983 merely provides remedies for deprivations of rights that are enshrined elsewhere. *Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). In the present matter, none of the underlying causes of action provide for individual liability. Plaintiff is suing Individual Defendants under the ADA and Title VII, and as explained above, neither piece of legislation provide for individual liability. Thus, Plaintiff has no valid claim under Section 1983. Accordingly, Plaintiff's Section 1983 claims against Individual

Defendants in their personal capacities are hereby **DISMISSED** with prejudice.

### D. INDIVIDUAL LIABILITY UNDER PUERTO RICO ACT NO. 44 OF JULY 2, 1985 ("Law 44")

■ Courts have consistently held that there is no individual liability under Law 44. *Suarez v. Venator Group, Inc.,* No. 08–2017, 2009 WL 4015655 (D.P.R. Nov. 17, 2009) (citing *Vazquez Vazquez v. Checkpoint Sys. of P.R., Inc.,* 609 F.Supp.2d 217, 220 (D.P.R.2009)); *Otero–Merced v. Preferred Health Inc.,* 680 F.Supp.2d 388 (D.P.R.2010); *Velez Nieves v. Microsoft Caribbean, Inc.,* Civ. 05–1067, Civ. 05–1098, 2006 WL 1805689 (D.P.R. Mar. 15, 2006).

Law 44 bans employment discrimination against "persons with any kind of physical, mental or sensory disability." P.R. Laws Ann., tit. 1, § 504. "The Puerto Rico Supreme Court has yet to rule on the question of individual liability under Law 44. Law 44, amended in response to the 1991 ADA amendments, is meant to be the Puerto Rico counterpart to the ADA and to mirror the ADA's provisions for relief." *Otero–Merced,* 680 F.Supp.2d at 392. The elements of a Law 44 claim are almost identical to the elements of an ADA claim. *See Velez Nieves,* 2006 WL 1805689, at *9. Therefore, numerous Courts have reasoned that as there is no individual liability under the ADA, there can be no individual liability under Law 44. *Id.*[10]

---

9. The Eleventh Amendment bars suit in federal courts against states for monetary damages, but not for injunctive or prospective relief. However, Plaintiff does not request such relief from the Individual Defendants. *See supra* page 9.

10. In *Sánchez Barreto v. Swiss Just De P.R., Inc.,* the Puerto Rico Court of Appeals upheld a lower court's dismissal of a Law 44 claim because there is no individual liability under

Law 44. *Sánchez Barreto v. Swiss Just De P.R., Inc.,* No. IPE2002–0263(205), 2003 WL 23336311, at *1 (P.R. Cir. Nov. 6, 2003); *see also Vazquez Vazquez,* 609 F.Supp.2d at 220 (holding that there is no individual liability under Law 44). Further, this Court is of the opinion that a federal court within this district should avoid, as much as possible, trail blazing issues that have not been decided by the Supreme Court of Puerto Rico.

We find the analysis and logic applied by courts in this district compelling. The ADA and Law 44 are almost identical, and as the ADA does not provide for individual liability, neither should Law 44. Accordingly, Plaintiff's Law 44 claims against the Individual Defendants are **DISMISSED** with prejudice.

## VI. CONCLUSION

Based on the aforementioned reasons, Defendants' motions to dismiss are hereby **GRANTED in part** and **DENIED in part**. The following claims are **DISMISSED with prejudice**:

1) Monetary claims under the ADA against the UPR; and

2) Claims under the ADA, Title VII, Section 1983, and Law 44 against Individual Defendants in their official and personal capacities.

However, Plaintiff's ADA claims, notwithstanding Eleventh Amendment immunity, against the UPR for equitable and injunctive relief remain viable causes of action.

**IT IS SO ORDERED.**

### *ON RECONSIDERATION*

#### I. INTRODUCTION

Pending before the Court is Plaintiff, Felipe Cardona Román's ("Plaintiff") *Motion for Reconsideration* (Docket No. 58) filed on August 2, 2011. Plaintiff requests that the Court reconsider its *Amended Omnibus Opinion and Order* of July 27, 2011 (Docket No. 57). Specifically, Plaintiff requests that the Court reevaluate its *Order* dismissing Plaintiff's claims for lack of subject matter jurisdiction *with prejudice,* and recommends that the dismissal instead be *without prejudice.* Plaintiff further requests that the Court reconsider its dismissal of Plaintiff's Section 1983 and Articles 1802 and 1803 of the Puerto Rico Civil Code claims against Defendants Jose

Juan Estrada ("Estrada"), Orlando Ruiz ("Ruiz"), Bienvenido Flores ("Flores"), Jazmin Ocasio ("Ocasio"), and Alberto Feliciano ("Feliciano"), all in their individual capacities. Plaintiff alleges that Defendants never sought dismissals of these claims and that the Court should have put Plaintiff on notice of its intention to dismiss these claims in order for Plaintiff to have the opportunity to properly amended the complaint.

## II. STANDARD OF REVIEW FOR MOTIONS FOR RECONSIDERATION

Motions for reconsideration are generally considered either under Rules 59 or 60 of the Federal Rules of Civil Procedure, depending on the time when such motion is served. *See Perez–Perez v. Popular Leasing Rental, Inc.,* 993 F.2d 281, 284 (1st Cir.1993). It is well recognized that "[a] motion for reconsideration does not provide a vehicle for a party to undo its own procedural failures and it certainly does not allow a party to introduce new evidence or advance new arguments that could or should have been presented to the district court prior to judgment." *Marks 3–Zet–Ernst Marks GMBH & Co. KG v. Presstek, Inc.,* 455 F.3d 7, 15–16 (1st Cir.2006). Thus, a motion for reconsideration cannot be used as a vehicle to re-litigate matters previously adjudicated. *See Standard Quimica De Venezuela v. Central Hispano Int'l, Inc.,* 189 F.R.D. 202 n. 4 (D.P.R.1999).

Motions for reconsideration are entertained by courts if they seek to correct manifest errors of law, present newly discovered evidence, or when there is an intervening change in law. *See Prescott v. Higgins,* 538 F.3d 32, 45 (1st Cir. 2008); *see also Rivera Surillo & Co. v. Falconer Glass Indus., Inc.,* 37 F.3d 25, 29

(1st Cir.1994) (citing *F.D.I.C. Ins. Corp. v. World University, Inc.*, 978 F.2d 10, 16 (1st Cir.1992)). A motion for reconsideration is unavailable if said request simply brings forth a point of disagreement between the court and the litigant, or rehashes matters already properly disposed of by the Court. *See e.g. Waye v. First Citizen's National Bank*, 846 F.Supp. 310, 314 n. 3 (M.D.Pa.1994).

## III. ANALYSIS

### A. DISMISSAL OF CLAIMS WITH PREJUDICE

In the Court's *Amended Omnibus Opinion and Order*, the Court dismissed all monetary damages claims against the University of Puerto Rico ("UPR") and all claims against the UPR officials *with prejudice* under the Eleventh Amendment because the Commonwealth of Puerto Rico did not abrogate its immunity. *See Irizarry–Mora v. Univ. of Puerto Rico*, 647 F.3d 9, 11 n. 1 (1st Cir.2011) ("In the absence of consent, waiver, or abrogation, the Eleventh Amendment bars suit against states themselves regardless of the form of relief sought."). The Court reaffirms its dismissal with prejudice of federal claims against UPR or individual defendants acting in their official capacity. The Eleventh Amendment does not prohibit actions for damages against states or state entities in federal court but permit such actions to proceed in state court; rather the Eleventh Amendment prohibits actions for damages against states or state entities **under any federal law, regardless of the forum,** unless there is an abrogation. Thus, dismissals pursuant to the Eleventh Amendment are always with prejudice as a Plaintiff cannot litigate these same claims in another forum. There is, however, an exception to the Eleventh Amendment for prospective, injunctive relief as to UPR and its officials as clarified in the Court's *Amended Opinion and Order* (Docket No. 57).

### B. SUA SPONTE DISMISSAL

"Sua sponte dismissals are strong medicine, and should be dispensed sparingly." *Chute v. Walker*, 281 F.3d 314, 319 (1st Cir.2002) (internal citations and quotations omitted). "The general rule is that 'in limited circumstances, sua sponte dismissals of complaints under Rule 12(b)(6) ... are appropriate,' but that 'such dismissals are erroneous unless the parties have been afforded notice and an opportunity to amend the complaint or otherwise respond.'" *Martinez–Rivera v. Sanchez Ramos*, 498 F.3d 3, 7 (1st Cir. 2007) (internal citations and quotations omitted). "If it is clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a sua sponte dismissal may stand." *Gonzalez–Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001).

Out of an abundance of caution, the Court will reserve judgment as to Plaintiff's First, Fourth, and Fourteenth Amendment claims under Section 1983 and Plaintiff's Articles 1802 and 1803 claims against Defendants Estrada, Ruiz, Flores, Ocasio and Feliciano in their individual capacities. The Court hereby puts Plaintiff on notice that the Court finds these claims dubious at best based upon the present complaint. *See Bell Atlantic v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). However, the Court, in order to avoid a 12(b)(6) motion to dismiss, grants Plaintiff leave to amend its pleadings, regarding these claims against the aforementioned Defendants in their individual capacity only, within twenty days of this *Order.*

134

## IV.   CONCLUSION

For the reasons stated above, the Court hereby **GRANTS** Plaintiff's Motion for Reconsideration (Docket No. 58), and partially modifies the *Amended Omnibus Opinion and Order* (Docket No. 57) as stated herein.   Plaintiff has twenty days to file an *Amended Complaint,* but is not obligated to do so, with regards to Plaintiff's First, Fourth, and Fourteenth Amendment claims against Defendants Estrada, Ruiz, Flores, Ocasio and Feliciano in their personal capacity only, and Plaintiff's Articles 1802 and 1803 claims against the same Defendants.

**IT IS SO ORDERED.**